**In re Hobart Mahnkin COCKREHAM and Marilyn Grace Cockreham, Debtors.**

**Cherie Shelton NORMAN, Trustee, Plaintiff–Appellee,**

v.

**JIRDON AGRI CHEMICALS, INC., Defendant–Appellant.**

No. C87–386–K.

United States District Court, D. Wyoming.

April 4, 1988.

Cherie Shelton Norman, Monroe and Norman, Casper, Wyo., appearing on the brief as counsel for plaintiff-appellee.

Clifford J. Neilson, Casper, Wyo., appearing on the brief as counsel for defendant-appellant.

## MEMORANDUM OPINION

KERR, District Judge.

This is an appeal from the decision of the bankruptcy court finding an avoidable preferential transfer pursuant to § 547 of the Bankruptcy Reform Act of 1978 (Code), 11 U.S.C. § 547, and subsequent Order decreeing that the trustee (plaintiff-appellee) is entitled to judgment against Jirdon Agri Chemicals, Inc. (defendant-appellant), in the amount of $10,760.12. Upon stipulation of the parties, this appeal is submitted on the briefs without the necessity of oral argument. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

Debtors Hobart and Marilyn Cockreham filed a voluntary Chapter 7 liquidation petition on January 11, 1985; however, it is the

events which transpired prior to this date and their legal significance which formed the basis of the action below.

Jirdon Agri Chemicals, Inc. (Jirdon), is a Nebraska corporation which markets a wide variety of agricultural chemicals and fertilizers in Wyoming. It sold and delivered some $18,000 worth of chemicals and fertilizer to debtors in 1981. Payment for approximately half of this amount was made in July of 1982. On December 24, 1982, a check drawn on the Lusk State Bank was made out to Jirdon in the amount of $9,436.61, the balance remaining, and signed "Hobart M. Cockreham." This check was later dishonored for insufficient funds and attempts at collecting the balance proved futile, in spite of debtors' execution of a promissory note for the balance.

In an attempt to improve its position, Jirdon brought suit on the note in state court. The state court entered judgment by default against Hobart Cockreham on May 3, 1983, awarding $11,172.22 to Jirdon. No further action was taken until November 13, 1984, when Jirdon petitioned the state court for a writ of execution, directing the sheriff to seize certain of debtors' property, namely, some 188 tons of baled alfalfa hay.

Following issuance and service of the writ, the sheriff proceeded to levy against the debtors' hay and, after advertisement of the pending sale, the hay was sold to three individuals on December 3, 1984, approximately five weeks prior to debtors' filing of the Chapter 7 petition. Two checks totaling $10,760.12 were forwarded by the sheriff to Jirdon.

These facts are essentially undisputed; it is the legal ramifications underlying this chain of events that have resulted in this lawsuit. After issuing Findings of Fact and Conclusions of Law, the bankruptcy judge rendered a judgment the pertinent portions of which stated:

[T]he plaintiff having established all elements of an avoidable preferential transfer pursuant to 11 U.S.C. § 547, the transfer of the debtors' interest in hay sold at execution sale on December 3, 1984 ... hereby is [ ] avoided in the amount of $10,760.12; and, it is further ORDERED, that the plaintiff be, and hereby is, entitled to Judgment against defendant Jirdon Agri Chemicals, Inc., in he [sic] amount of $10,760.12....

Plaintiff-appellee's position is that under 11 U.S.C. § 547, the preference section of the Code, the transfer of the alfalfa hay, albeit involuntary, resulting ultimately in partial satisfaction of the judgment obtained in state court by defendant-appellant, constituted a preferential transfer which the bankruptcy judge properly allowed the trustee to avoid. Defendant-appellant, while acknowledging the propriety of invoking § 547, relies, in part, upon applicable state law and the Code to urge that the state judicial lien effectively attached the debtors' property interest in the hay when the sheriff executed on the property November 14, 1984. The logical consequence of this premise, according to defendant-appellant, gives it priority over the rights and powers of a trustee under § 544.

With the advent of the Bankruptcy Code, a trustee was given sweeping powers of avoidance to prevent those persons with an eye toward seeking the protective umbrella of bankruptcy from perpetrating a fraud upon creditors by disposing of all or part of their assets in advance. Several sections of the Code exemplify the extent to which a trustee may go to bring property back into a bankrupt's estate. Under § 544, for example, a trustee has the power of a hypothetical lien creditor:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial

lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists....

11 U.S.C. § 544(a) (1982).

Thus, § 544(a) gives a trustee the powers of (1) a judicial lien creditor; (2) a creditor holding an execution returned unsatisfied; and (3) a bona fide purchaser of real property from the debtor. The powers conferred upon the trustee by this section "are those which the state law would allow to a supposed or hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal (or equitable) processes for perfection of a lien ..." against available property of the debtor. 4 Lawrence P. King, Collier on Bankruptcy ¶ 544.02, at 544–(5–6) (15th ed. 1988). *See also Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531, 1532–1533 (10th Cir.1987). Because the property involved is situated in Wyoming, the law of Wyoming is applicable.

Under Wyoming law, "[w]hen a judgment or order is made determining any matter affecting the title to real property, a certified copy of the judgment or order shall be recorded in the office of the county clerk of the county in which the property is situate." Wyo.Stat. § 1–16–301 (1977). Recordation of the judgment effectuates a lien on non-exempt real property. The same is not true where personal property, as here, is involved. Wyoming subscribes to the common law rule that delivery of the writ of execution to the sheriff of the appropriate county creates an execution lien on personal property of the debtor. See Wyo.Stat. § 1–17–309 (1977).

Defendant-appellant correctly argues that the sheriff's execution, coming on November 14, 1984, gave it priority as against the trustee. Such an argument, though, is not only overly simplistic; it is also overshadowed by the factual situation presented here. Of particular concern is the time execution was sought relative to rendition of the judgment. It was not until late 1984, over a year after Jirdon obtained judgment against the Cockrehams, that it sought and obtained a writ of execution on the judgment.

While Wyoming has a five-year statute of limitations respecting execution on judgments, see Wyo.Stat. § 1–17–307 (1977), this statute does not provide a five-year safe haven in all circumstances. See Wyo. Stat. § 1–17–336 (1977). In accordance with § 1–17–307, the Court perceives no irregularities where a creditor waits approximately one and a half years from judgment to seek a writ of execution. The inquiry does not end here, however. When coupled with the timing of the filing of the bankruptcy petition, this waiting period is questionable. The priority to which defendant-appellant clings is voidable, for no provision of the Bankruptcy Code exists in a vacuum.

The Bankruptcy Code allows a trustee to avoid certain transfers. See 11 U.S.C. § 547. In pertinent part, § 547 provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1982).[1]

 Section 547 is aimed at preventing preferential transfers in anticipation of bankruptcy. A preferential transfer occurs when a creditor receives, under the sanctions of § 547(b), payment of a larger percentage of its claim than it would otherwise have received had it participated in the bankruptcy distribution with the rest of debtors' creditors. *See, e.g., Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1355 (5th Cir.1986); *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.),* 792 F.2d 125, 127 (10th Cir.1986); *Van Huffel Tube Corp. v. A & G Industries (Matter of Van Huffel Tube Corp.),* 74 B.R. 579, 584 (Bankr.N.D. Ohio 1987); *Dunlavey v. Uhlmeyer (In re Uhlmeyer),* 67 B.R. 977, 980 (Bankr.D.Ariz. 1986); *Danziger v. Banco Urquijo S.A. (In re Roscar Steel Scrap and Metals Corp.),* 12 B.R. 629, 633 (S.D.N.Y.1981); and *Weill v. Tennessee Central Credit Union (In re Kelley),* 3 B.R. 651, 653 (Bankr.E.D.Tenn. 1980). If a preferential payment has taken place, the law regards the transaction as a nullity, requiring that it be returned to the bankrupt's estate. *See Herman Cantor Corp. v. Central Fidelity Bank (In re Herman Cantor Corp.),* 15 B.R. 747, 750 (Bankr.E.D.Va.1981).

The policy behind the Bankruptcy Code's prohibition on preferential transfers is twofold—to discourage any activity by a debtor or creditor prior to bankruptcy which might deplete the debtor's assets and to provide an equitable pro rata distribution among all creditors of the debtor. *See, e.g., Deel Rent–A–Car, Inc. v. Levine,* 721 F.2d 750, 754 (11th Cir.1983); *DeRosa v. Buildex Inc. (In re F & S Central Mfg.*

*Corp.),* 53 B.R. 842, 846 (Bankr.E.D.N.Y. 1985); *In re Bennett,* 35 B.R. 357, 360 (Bankr.N.D.Ill.1984); and *Lumpkins v. Apex Inc. (In re Lumpkins),* 12 B.R. 44, 45 (Bankr.D.R.I.1981). Taking advantage of the mechanism put in place by § 547 allows a trustee to marshal all eligible assets of the debtor for distribution. *See generally Grover v. Gulino (In re Gulino),* 779 F.2d 546, 548 (9th Cir.1985). In short, a trustee's avoidance powers are intended for the benefit of *all creditors* of the debtor. *J.E. Jennings, Inc. v. William Carter Co. (In re J.E. Jennings, Inc.),* 46 B.R. 167, 169 (Bankr.E.D.Pa.1985).

 For a preferential transfer to exist, all five of the statutory criteria reproduced above must be proven. *See Bernstein v. RJL Leasing (In re White River Corp.),* 50 B.R. 403, 406 (Bankr.D.Colo. 1985), *rev'd on other grounds,* 799 F.2d 631 (10th Cir.1986). The trustee carries the burden of proving the existence of each element by a preponderance of the evidence. *See, e.g., First Potter County Bank v. Hogg (In re Hogg),* 35 B.R. 292, 294 (Bankr.D.S.D.1983) and *Anderson v. Burnham (In re Burnham),* 12 B.R. 286, 297 (Bankr.N.D.Ga.1981). Failure to meet that burden as to any element insulates the transfer from the trustee. *See, e.g., Hassett v. Blue Cross and Blue Shield of Greater New York (Matter of O.P.M. Leasing Services, Inc.),* 46 B.R. 661, 666 (Bankr. S.D.N.Y.1985); *Merrill v. Abbott (In re Independent Clearing House Co.),* 41 B.R. 985, 1010 (Bankr.D.Utah 1984); *Thomas Farm Systems, Inc. v. Erb (In re Thomas Farm Systems, Inc.),* 18 B.R. 543, 544 (Bankr.E.D.Pa.1982); and *Yale Express System, Inc. v. Budd Leasing Corp. (Matter of Yale Express System, Inc.),* 11 B.R. 495, 499 (Bankr.S.D.N.Y.1981). Even if all five elements are present, the trustee may not be able to exercise his powers of avoidance if a creditor can demonstrate the existence of a statutory defense which would

---

**1.** The exceptions to the trustee's avoiding powers referred to in subsection (c) deal with substantially contemporaneous exchanges, transfers made in the ordinary course of business made not later than 45 days after the debt was incurred, transfers of a security interest to the extent new value is secured, transfers of a perfected security interest in inventory, and transfers regarding certain statutory liens, and thus are inapplicable in the case at bar.

except the transfer. *See, e.g., In re White River Corp.*, 50 B.R. at 406 and *Grogan v. Southwest Textiles, Inc. (Matter of Advance Glove Mfg. Co.)*, 42 B.R. 489, 492 (Bankr.E.D.Mich.1984).

■ Plaintiff-appellee correctly contends that all five of the elements of a preferential transfer were proven below. A transfer for purposes of the Code is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption...." 11 U.S.C. § 101(50) (Supp.IV 1986). Nonconsensual transfers such as executions obtained through judicial proceedings are within the purview of this definition. *Rocky Mountain Ethanol Systems, Inc. v. Mann, Inc. (In re Rocky Mountain Ethanol Systems, Inc.)*, 21 B.R. 707, 709 (Bankr.D.N.M.1981) (citing *Hines v. Anderson (In re Hines)*, 3 B.R. 370 (Bankr. D.S.D.1980)).

■ The evidence before the bankruptcy judge showed that Jirdon, a judgment creditor of the debtors, obtained a writ of execution which led to the sheriff executing on debtors' hay some 68 days prior to the institution of bankruptcy proceedings. Subsequently, 40 days before debtors filed for bankruptcy, their hay was sold to three purchasers, and the proceeds in the amount of $10,760.12 were remitted to Jirdon.

Before the bankruptcy court, plaintiff-appellee sought to elicit from an accountant the amount which defendant-appellant would have received had no transfer occurred. The following exchange took place:

Q Can you tell the Court how much is in the Estate currently?

A Currently there is $4,077.19 in the Estate.

Q In, Exhibit E presumes that there is additional funds that are not currently in the Estate without the Jirdon Agri Chemicals; is that correct?

A That's correct.

Q How much, we've already stated how much Jirdon Agri Chemicals received prior to the Bankruptcy. If those funds would have come into the Bankrupts' Estate and they would have received a distribution under the Chapter 7, approximately how much would they receive?

A *They would have received $167.54.* Tr. at 18–19 (emphasis added).

By not participating in the distribution of the bankrupts' estate, defendant-appellant not only depleted the recovery which debtors' remaining creditors would have been entitled to but also Jirdon obtained a windfall in the amount of $10,592.58. Moreover, testimony disclosed that at the time the hay was seized and sold, the Cockrehams were already insolvent. This is precisely the sort of abuse which § 547(b) is in place to prevent.

Defendant-appellant does not dispute the propriety of the trustee's reliance upon § 547. It attempts, however, to present a defense grounded in § 550 of the Bankruptcy Code, 11 U.S.C. § 550, and in the doctrine of relation back. The portions of § 550 relevant to Jirdon's claim read as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction of securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

\* \* \* \* \* \*

11 U.S.C. § 550 (1982).

Utilizing the exceptions set forth in § 550(b), defendant-appellant frames a

rather imaginative argument. In Jirdon's own words, the explanation runs like this:

> If one will visualize a flow chart covering the movements of the Debtors' property, one would see, first, a transfer of the custody and control of the hay into the hands of the Sheriff; later, a sale of the hay and a transfer of same to the three execution purchasers. The value of the hay, measured in dollars, then moved back to the Sheriff who, in turn, paid these dollars over to [Jirdon].

Appellant's brief at 12.

Because no "actual transfer" to Jirdon occurred at the time of the execution in defendant-appellant's view, it is immune from liability because in the series of events which culminated in defendant-appellant's receipt of the sale proceeds, it was a subsequent good faith transferee. Defendant-appellant's reliance, at this point, upon *Smith v. Mixon (In re Mixon)*, 788 F.2d 229 (4th Cir.1986), is infirm. It is true that the court there held that a trustee could not recover from a subsequent transferee who takes in good faith and without knowledge of the voidability of the transfer.

*Mixon*, however, is distinguishable from the case at bar. If the Court were to accept Jirdon's interpretation, it would be sanctioning an attempt to do indirectly that which Jirdon cannot do directly. It is improper for Jirdon to cast itself as a subsequent transferee when, in actuality, it set in motion the transfer of debtors' hay and payment to itself, all within the time period proscribed by § 547. It is the three purchasers of the hay who are the actual subsequent transferees that took for value in good faith and without knowledge of the voidability of the transfer. Likewise, it is these three purchasers, not Jirdon, who are shielded from the trustee's avoiding powers. Jirdon deprived the debtors of a source of income they otherwise would have had since testimony below indicated that the debtors had planned on selling the hay. It seems likely that Jirdon's action may have precipitated the decision to file for bankruptcy.

Before laying to rest the subsequent transferee argument advanced by Jirdon, a brief analysis of the sheriff's role in the execution process requires attention. In its brief, defendant-appellant contends that the sheriff was a transferee, acting in a ministerial capacity as agent of the court. The trustee counters that the sheriff, by seizing the property, did not acquire title therein but was merely an agent of the court and for Jirdon since the execution occurred at the behest of Jirdon.

Under Wyoming law, when a writ of execution issues upon petition of a judgment creditor, a court "shall command the officer ...," in this case a sheriff, to execute on the judgment to satisfy a judgment creditor's claim. Wyo.Stat. § 1–17–308 (1977). The sheriff is statutorily authorized to "proceed immediately to levy the writ upon the goods and chattels of the debtor...." Wyo.Stat. § 1–17–310 (1977). These sections, read in conjunction with Wyo.Stat. §§ 1–17–319 and 1–17–321, demonstrate that the driving force behind execution proceedings is the judgment creditor.

It is well-settled that "execution sales are not for the sale of any specified property but only for the recovery of a designated sum of money." *Chittim v. Armco Steel Corp.*, 407 P.2d 1015, 1017 (Wyo.1965). The purpose behind the writ of execution is to obtain payment of a debt by operation of law. This result obtains regardless of whether the sheriff seizes from the debtor a sum certain of money or must sell a debtor's personal or real property in order to recover the appropriate amount of money. Without the sheriff, Jirdon would have no ability or authority, save self-help if accomplished peaceably, to seize and sell debtors' hay. In short, the sheriff acts as an extension of the judgment creditor.

The fact that the sheriff acted as agent for Jirdon cannot detract from the conclusion that this judgment creditor received a preferential transfer. *See Rocky Mountain Ethanol Systems, Inc. v. Mann, Inc. (In re Rocky Mountain Ethanol Systems, Inc.)*, 21 B.R. 707 (Bankr.D.N.M.1981). Defendant-appellant can hardly be heard to

insist that it was a bona fide purchaser acting in good faith when, by its action, it divested the debtors of an asset which might have staved off bankruptcy or, in the alternative, would have been available for equitable distribution among all of debtors' creditors. In accord, *see State Bank of Campbell v. Lassiter (In re Lassiter)*, 42 B.R. 631 (Bankr.E.D.Mo.1984); *Seidle v. Kwik Copy, Inc. (In re Belize Airways Limited)*, 18 B.R. 485 (Bankr.S.D.Fla.1982): and *Vero Cooling & Heating, Inc. v. Dobeck (In re Vero Cooling & Heating, Inc.)*, 11 B.R. 359 (Bankr.S.D.Fla.1981). In light of the above analysis, this Court finds defendant-appellant's reliance upon the doctrine of relation back to be equally without merit.

In reviewing decisions from the bankruptcy court, this Court must apply a clearly erroneous standard of review. *First Bank of Colorado Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 678 (10th Cir.1987). While such a standard allows a reviewing court to make legal determinations *de novo*, the court is not required to conduct a *de novo* review of the bankruptcy court's decision. *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399–400 (10th Cir.1986).

A reviewing court cannot reverse the decision of the bankruptcy court merely because it would have decided the case differently. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985). Absent " 'the most cogent reasons appearing in the record ...,' " the findings of a bankruptcy court should stand. *First Bank of Catoosa v. Reid (In re Reid)*, 757 F.2d 230, 233–234 (10th Cir.1985) (quoting *Kansas Federal Credit Union v. Niemeier*, 227 F.2d 287, 291 (10th Cir.1955)).

For the reasons set forth above, this Court finds that the decision of the bankruptcy judge was not clearly erroneous. An Order affirming the decision of the bankruptcy court will be entered in accordance with this Memorandum Opinion.