**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-20021.

In the Matter of John Leo CRISWELL, Debtor.

CULLEN CENTER BANK & TRUST, Appellee-Cross Appellant,

v.

Nelson T. HENSLEY, Trustee, Appellant-Cross Appellee.

Jan. 9, 1997.

Appeals from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and WIENER and STEWART, Circuit Judges.

WIENER, Circuit Judge:

In this bankruptcy case, both Appellant/Cross Appellee Nelson T. Hensley, Trustee of the Estate of John Leo Criswell, (the trustee) and Appellee/Cross Appellant Cullen Center Bank & Trust, now known as Frost National Bank, N.A., (Cullen) appeal from a district court decision affirming in part and reversing in part a bankruptcy court grant of summary judgment. In its decision, the district court (1) affirmed the bankruptcy court's finding that Cullen's filing of a judicial lien constituted an avoidable preference under 11 U.S.C. § 547(b) but (2) reversed and remanded to the bankruptcy court because it found that Cullen was entitled to assert the good faith transferee for value defense allowed to subsequent transferees under 11 U.S.C. § 550(b). Concluding that the district court correctly found that Cullen's filing of the judicial lien was avoidable under § 547(b) but that Cullen was an "initial transferee," rather than a "subsequent transferee," and thus not entitled to assert any defenses under § 550(b), we affirm in part, reverse in part, and remand to the bankruptcy court with instructions that it reinstate its grant of summary judgment and order that the proceeds of the sale of the properties at issue be included in the bankruptcy estate.

I

1

FACTS AND PROCEEDINGS

The events giving rise to this bankruptcy proceeding began to unfold in October 1988 when John Leo Criswell executed a trust agreement creating the JC-5 Children's Trust (the Children's Trust) and conveyed his interest in several oil and gas properties to the trustee of the Children's Trust. This transaction, all parties now stipulate, was in fact a transfer in fraud of creditors. In fact, sometime after this transaction occurred, FIMSA, Inc., one of Criswell's creditors, filed suit to set aside the transfer under Texas' Uniform Fraudulent Transfer Act.[1]

In August 1989, approximately ten months after Criswell's fraudulent conveyance to the Children's Trust, Cullen obtained a judgment against Criswell for $122,227.67 plus interest. This judgment arose out of a lawsuit Cullen had filed against Criswell for monetary damages resulting from a lending transaction. Some six months after it obtained its judgment, on February 15, 1990 to be precise, Cullen filed an abstract of judgment in several Texas counties, including Live Oak County where the oil and gas properties previously transferred to the Children's Trust were located. Under Texas law, Cullen's recordation of this "abstract of judgment" created a judicial lien on any real property of Criswell, including after acquired real property, located in the counties in which it was recorded and indexed.[2]

Exactly one week later, on February 22, 1990, Criswell filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code. In October 1990, Criswell's case was converted to a chapter 7 proceeding, and Hensley was appointed trustee of the bankruptcy estate.

In January 1991, the trustee filed a motion to intervene in the FIMSA litigation already pending against Criswell and the Children's Trust. The following month the trustee filed a motion, which was subsequently granted, for authority to compromise the FIMSA litigation. The resulting settlement obtained by the trustee required the debtor and the Children's Trust to transfer all assets held by the Children's Trust to Criswell's bankruptcy estate. The assets, including the oil and gas

---

[1]*See* Tex. Bus. & Comm.Code § 24.001 *et seq.*

[2]*See* Texas Prop.Code § 52.001.

properties here at issue, were so transferred in August 1991. Later, the trustee sold the oil and gas properties to a third party, Forney Oil Corporation, for an amount greater than $122,227.67, the amount Cullen claimed that Criswell owed it.

Shortly after this sale, on November 21, 1991, the trustee filed a complaint in the Criswell chapter 7 bankruptcy case against Cullen seeking a declaratory judgment that the trustee had a priority claim to the proceeds of the Forney sale. The trustee subsequently amended the complaint to allege that Cullen's filing of the abstract of judgment constituted a preferential transfer and was avoidable pursuant to 11 U.S.C. § 547(b). The trustee eventually filed a motion for summary judgment on this claim. Cullen responded to the trustee's motion for summary judgment by (1) denying that the abstract of judgment constituted a transfer of property within the meaning of § 547(b), as there was no "interest of the debtor in property" to be transferred, and (2) arguing that even if filing the abstract constituted a preferential transfer, then Cullen was nevertheless a subsequent and good faith transferee for value from which the trustee could not recover pursuant to 11 U.S.C. § 550(b)

In August 1993, the bankruptcy court granted, without filing written reasons, the trustee's motion for summary judgment. Cullen timely appealed the bankruptcy court ruling to the district court. In a Judgment and accompanying Order and Memorandum, the district court affirmed the bankruptcy court's finding that Cullen's filing of the abstract of judgment constituted a preferential transfer of "an interest of the debtor in property" pursuant to § 547(b), but reversed the bankruptcy court's grant of summary judgment against Cullen, finding that Cullen was entitled to assert the good faith transferee for value defense allowed to *subsequent* transferees under § 550(b). The district court then remanded the case to the bankruptcy court for proceedings consistent with its opinion.[3]

_____

[3]At our request, both parties have addressed whether the order from which they have appealed is a "final" order pursuant 28 U.S.C. § 158(d) and in light of our decision in *Matter of Aegis Specialty Marketing Inc. of Alabama,* 68 F.3d 919, 921 (5th Cir.1995). Both parties contend, distinguishing *Aegis,* that the district court's order here is final because the limited and essentially "ministerial" further proceedings required by its remand to the bankruptcy court will neither enhance nor alter our resolution of the issues now before us, and, moreover, could well prove futile. We agree with this reasoning, and are satisfied that we have jurisdiction to hear this appeal.

Both parties have appealed the district court's judgment. First, on direct appeal, the trustee argues that, by filing its abstract of judgment, Cullen either (1) was not a transferee of any kind under § 547(b), as its lien did not attach to any real property of the debtor located in Live Oak County, or (2) at most became an "initial transferee" from which the estate can recover under § 550(a) and which cannot avail itself of the good faith transferee for value defense provided by § 550(b). In reply and on cross-appeal, Cullen contends that (1) the district court erred in finding that there was "an interest of the debtor in property" to be transferred as a preference pursuant to § 547(b), but (2) if there was such an interest, the district court was correct in holding that Cullen is entitled to the good faith transferee for value defense under § 550(b) because either (a) the trustee is judicially estopped from now arguing that Cullen was not a transferee of any kind, or (b) Cullen is indeed a *subsequent* not an *initial* transferee.

## II

## ANALYSIS

### 1. STANDARD OF REVIEW

We review a partial grant of summary judgment de novo and apply the same standards used by the district court.[4] Therefore, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[5] Further, we note that as the bankruptcy and district court rulings under consideration on this appeal are exclusively conclusions of law, they are subject to de novo review.[6]

### 2. CRISWELL'S FRAUDULENT TRANSFER AND "AN INTEREST OF THE DEBTOR IN PROPERTY" UNDER § 547(B)

In the logic of the Bankruptcy Code's preference-avoiding statutes, the first issue to be

---

[4]*McMurtray v. Holladay,* 11 F.3d 499, 502 (5th Cir.1993).

[5]Fed.R.Civ.P. 56(c).

[6]*Matter of McDaniel,* 70 F.3d 841, 843 (5th Cir.1995).

4

decided in this case is the one challenged by Cullen on cross appeal—that is, whether Cullen's filing of its abstract of judgment constituted a preferential transfer of "an interest of the debtor in property" under 11 U.S.C. § 547(b), given that Criswell had transferred legal title to the relevant properties to the Children's Trust before Cullen filed its abstract of judgment.

In general, § 547(b) permits a trustee to avoid various preferential transfers of the debtor's property made prior to the commencement of a bankruptcy case.[7] Congress enacted this preference-avoiding section with two intertwined purposes in mind: (1) discouraging creditors from racing to the courthouse to dismember the debtor during his slide into bankruptcy, and (2) facilitating the prime bankruptcy policy of equality of distribution among creditors of the debtor.[8] As one of the leading treatises has observed, the underlying theory for voiding preferences must be distinguished

---

[7]11 U.S.C. 547(b) provides in full:

> Except as provided in Subsection (c) of this section, the trustee may avoid *any transfer of an interest of the debtor in property*—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the filing of the petition;  or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider;  and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under Chapter 7 of this title;
>
> (B) the transfer had not been made;  and
>
> (c) such creditor received payment of such debt to the extent provided by the provisions of this title (emphasis added).

[8]H.R.Rep. No. 595, 95th Cong., 1st Sess., at 177-78 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6138.

5

from the rationale for voiding fraudulent transfers: "A preference is an infraction of the rule of equal distribution among all creditors; a fraudulent transfer goes further, and by it the debtor seeks through deceitful means to secure a personal advantage out of what in law should belong to creditors and not to the debtor."[9] Accordingly, neither the intent nor motive of the parties is relevant in consideration of an alleged preference under § 547(b).[10]

Turning now to the application of § 547(b) to the specific facts of this case, we first observe that the definition of "transfer" under the Bankruptcy Code is comprehensive and includes every conceivable mode of alienating property, whether directly or indirectly, voluntarily or involuntarily.[11] Given this broad meaning of "transfer," the fixing of a non-statutory, judicial lien—such as the one created by Cullen's filing of its abstract of judgment—is avoidable as a preferential "transfer" provided § 547(b)'s other requirements are satisfied.[12] In the instant case, the parties properly stipulated that a "transfer" of property did take place when Cullen filed its abstract of judgment and further agreed that all but one of the other requirements of § 547(b) were satisfied. Thus narrowed, their dispute, which we now confront on appeal, centers on whether the oil and gas properties located in Live Oak County, Texas, to which Cullen's abstract of judgment purportedly attached, were "properties of the debtor,"—or, in the language of the Code, whether there was "an interest of the debtor [Criswell] in property" that could have been transferred by the filing of the abstract of judgment.

Regrettably, the term "property of the debtor" (i.e., "interest of the debtor in property") is not defined for purposes of the preference-avoiding statute itself.[13] In the absence of an express definition of this term, Cullen argues that as the Children's Trust actually held legal title to the subject oil and

---

[9]Lawrence P. King, ed., 4 *Collier on Bankruptcy,* ¶ 547.01, at 547-12 (15th edition 1996).

[10]*Id.* at 547-13.

[11]11 U.S.C. § 101(54).

[12]4 *Collier on Bankruptcy,* ¶ 547.03, at 547-20; 11 U.S.C. § 547(c)(6). *See also In re Cockreham,* 84 B.R. 757, 762 (D.Wyo.1988) (nonconsensual transfers such as execution sales obtained through judicial proceedings are within the purview of Code's definition of "transfer").

[13]4 *Collier on Bankruptcy,* ¶ 547.03, at 547-24.

gas properties on the day that the abstract of judgment was filed, the properties cannot be considered "property of the debtor," but instead were property of the Children's Trust. Consequently, Cullen reasons, there was no "interest of the debtor in property" in Live Oak County to be transferred by Cullen's otherwise preferential filing of the abstract of judgment.[14]  Both the bankruptcy and district courts, however, rejected this theory, with the latter using, in essence, a two-step analysis.

The district court first concluded that the term "interest of the debtor in property" under § 547(b) is, for purposes of this case, equivalent to the term "property of the estate" under § 541 and therefore encompasses "all legal or *equitable interests* of the debtor in property as of the commencement of the case."[15]  Second, with this definitional equivalency in mind, the district court reasoned that, as Criswell's transfer of the properties to the Children's Trust in October 1988 was fraudulent under state law, the debtor must be deemed to have maintained at least an *equitable,* if not a legal, *interest* in the property fraudulently transferred to the Children's Trust, which interest therefore could be the subject of an avoidable preference under § 547(b).  We find the district court's analysis compelling;  it properly resolves this first issue and is consistent with the reasoning in decisions of the Supreme Court, this circuit, and other courts in similar cases.

We begin, just as the district court did, by noting that § 541 defines the property of a bankruptcy estate first and most generally as including "all legal or *equitable interests* of the debtor in property as of the commencement of the case,"[16] before it goes on to include "[a]ny interest in property that the trustee recovers under section ... 550 [the recovery provision for § 547 preferences

_____

[14]It seems clear to us that Cullen must acknowledge that Criswell maintained some kind of interest in the Live Oak County properties, at least under Texas law, if Cullen's abstract of judgment is to entitle Cullen to a priority claim (vis-á-vis the estate) to the proceeds of the sale of the properties to Forney.  Otherwise, there would be no reason for Cullen's contesting the trustee's claim in this case because Cullen then would be treated just like any of Criswell's other unsecured creditors.

[15]11 U.S.C. § 541(a)(1) (emphasis added).

[16]*Id.*

7

and §§ 544 and 548 fraudulent transfers],"[17] and "[a]ny interest in property that the estate acquires after the commencement of the case."[18] These § 541 "property of the estate" definitions have been directly linked with the term "interest of the debtor in property" under § 547(b) by a number of courts, including the Supreme Court.

First, in *Begier v. IRS,*[19] a case concerning whether payment by a corporate debtor of withheld payroll, income, and excise taxes (i.e., "trust-fund taxes") to the IRS was an avoidable preference under § 547, the Supreme Court recognized that the term "property of the debtor" is not defined for purposes of § 547. The Court then observed, however, that, given the purposes of the preference avoiding statute, the term "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."[20] Thus, the court concluded:

> For guidance, then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the post-petition analog to § 547(b)'s "property of the debtor."[21]

The Court, in *Begier,* then used § 541's primary definition of "property of the estate" to make an inquiry into the "equitable" interests of the debtor in the later transferred property.[22]

In somewhat similar circumstances, the Eighth Circuit, in *In re Bellanca Aircraft Corp.,*[23]

---

[17]11 U.S.C. § 541(a)(3).

[18]11 U.S.C. § 541(a)(7).

[19]496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

[20]496 U.S. at 58, 110 S.Ct. at 2263.

[21]496 U.S. at 58-59, 110 S.Ct. at 2263.

[22]In *Begier,* the Court eventually found that the funds at issue (withheld FICA, income and excise taxes) were held *in trust* for the government and then transferred. As the debtor had *neither* equitable or legal title to these funds, there was no "property of the debtor" to transfer and no voidable preference under § 547(b). *See* 496 U.S. at 60-67, 110 S.Ct. at 2263-67. In the instant case, by contrast, there is no dispute that before the debtor transferred the oil and gas properties to the Children's Trust, they were properties of the debtor. Hence, though *Begier* is distinguishable on its facts, its reasoning remains on point.

[23]850 F.2d 1275, 1278-79 (8th Cir.1988).

8

faced the question whether proceeds of airplane sales that were seemingly in the hands and under the control of a debtor but which were soon passed on to a third party were "property of the debtor" under § 547(b). In this context, the court made the following observation:

> Because "property of the estate" includes "all legal or equitable interests of the debtor in property ... [,]" § 541(a)(1), "property of the debtor" as used in the definition of a voidable preference, *see* § 547(b), is for these purposes equivalent to "property of the estate."[24]

Finally, a bankruptcy court, in a carefully considered opinion concerning a preference avoidance action under § 547(b), noted the absence of a definition of "property" in that statute, but found that § 541's definition of "property of the estate" could usefully be employed to determine what constitutes "property of the debtor" under § 547(b).[25] That court pointed to two additional reasons for its linkage of these terms:

> (1) as sections 541(a) and 301 indicate, property of the debtor *is* property of the estate upon filing of the bankruptcy petition subject to any exemptions claimed under section 522; and (2) the principle of section 547 is to avoid "only those preferential transfers that result in a depletion of the debtor's *estate* and that do not fall within one of the exceptions listed in section 547(c)."[26]

In light of the instructive reasoning of all three of these decisions, we agree with the district court that it makes most sense to read the term "interest of the debtor in property" under § 547(b) as here being synonymous with the the term "property of the estate" under § 541.

With this in mind, we turn now to our decision in *In re MortgageAmerica*,[27] in which we held that the automatic stay provisions of 11 U.S.C. § 362 prevented a creditor from continuing to pursue a cause of action under the Texas Uniform Fraudulent Transfer Act after a petition for bankruptcy had been filed by the debtor/transferor. In reaching this holding, we observed:

---

[24]*Id.* at 1279 n. 8.

[25]*In re General Office Furniture Wholesalers, Inc.,* 42 B.R. 232, 234-35 (Bankr.E.D.Va.1984).

[26]*Id.* at 235 (quoting 4 *Collier on Bankruptcy,* ¶ 547.21, at 547-79 to 547-85 (15th ed.1984) (emphasis added)).

[27]714 F.2d 1266 (5th Cir.1983). Even though a Second Circuit decision, *In re Colonial Realty Co.,* 980 F.2d 125, 131 (2nd Cir.1992), has criticized part of our reasoning, the *MortgageAmerica* decision remains binding precedent in this circuit.

An action under the [Texas] Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of reach of creditors. The transferee may have colorable title to the property, but *the equitable interest*—at least as far as the creditors (but not the debtor) are concerned—*is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor has never transferred it.* We think that when such a debtor is forced into bankruptcy, it makes most sense to consider the debtor as continuing to have a "legal or equitable interest[ ]" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.[28]

We then concluded:

[p]roperty fraudulently conveyed and recoverable under the Texas Fraudulent Transfers Act remains, despite the purported transfer, *property of the estate* within the meaning of 70(a)(4) of the old Bankruptcy Act, and hence of section 541(a)(1) of the new Code.[29]

In other words, what we recognized in *MortgageAmerica* is that when a soon-to-be-bankrupt debtor (like Criswell) fraudulently transfers property to shield it from his creditors, that debtor/transferor should be considered to have retained an *equitable* interest in the property so that it will continue to be considered "property of the estate."[30] Applying *MortgageAmerica*'s principles to the facts of this case makes it clear that Criswell must be deemed to have retained an equitable interest in the oil and gas properties he fraudulently transferred to the Children's Trust, and that these properties should therefore be deemed to be both "property of the estate" under § 541 and "property of the debtor" under § 547(b).

Cullen argues predictably that *MortgageAmerica* is distinguishable from the facts of this case because (1) an additional state cause of action asserted by the creditor (aside from its Fraudulent Transfer Act claim) was based on the "corporate trust fund" doctrine, and (2) the case did not involve a preferential transfer and therefore was not concerned with the meaning of the term "an interest of the debtor in property" as used in § 547(b). Cullen's first objection completely misses the mark. Despite Cullen's unrelenting insistence on the distinguishing importance of the corporate trust fund doctrine in *MortgageAmerica,* a careful and unbiased reading of the decision reveals that our

---

[28]*Id.* at 1275 (citations omitted) (emphasis added).

[29]*Id.* at 1277 (emphasis added).

[30]*Id.* at 1275.

10

discussion of that doctrine was entirely independent of the analysis we used in relation to the creditor's claim under the Texas Fraudulent Transfer Act—the portion of the opinion that is relevant here.[31]

Cullen's second objection to *MortgageAmerica* contains an accurate observation about that case but still does not undermine the applicability of the decision's reasoning to this case. Even though the claims in *MortgageAmerica* did not require its panel to consider the meaning of "property of the debtor" in § 547(b), we find it logical to conclude that if a creditor's mere attempt to "attach or execute a judgment upon [fraudulently transferred property]" is a violation of the automatic stay under *MortgageAmerica*,[32] this same action, if completed before the commencement of the case (as it was here by Cullen), should also constitute a transfer of "an interest of the debtor in property" within the meaning of § 547(b). Stated differently, the single fact that the creditor here perfected its judicial lien against fraudulently transferred property after the debtor had thus transferred it but before he filed for bankruptcy protection does not alter, or render inapposite, our basic recognition in *MortgageAmerica* that, for purposes of the Bankruptcy Code, a debtor/transferor retains an equitable interest in property that he has sought to transfer fraudulently.

In sum, we hold, relying on *Begier,* on the other property definition cases, and on *MortgageAmerica,* that (1) the term "interest of the debtor in property" under § 547(b) includes "all legal or *equitable* interests of the debtor as of the commencement of the case,"[33] (2) Criswell maintained at least an equitable interest in the oil and gas properties located in Live Oak County which he had transferred to the Children's Trust in fraud of his creditors, and (3) Cullen's filing of the abstract of judgment created a lien which therefore attached to this equitable interest of Criswell and constituted an avoidable preference under § 547(b).

---

[31]*Id.* at 1275-76 (Fraudulent Transfer Act analysis) & 1276-77 (trust fund (denuding) doctrine analysis).

[32]*Id.*

[33]11 U.S.C. § 541(a)(1) (emphasis added).

11

3. AN "INITIAL TRANSFEREE" UNDER § 550(A)

That determination completes only the first part of the two-part inquiry in this case. Having determined that the lien created by Cullen's filing of the abstract of judgment constituted a preferential transfer, we are asked in part two whether Cullen was an "initial transferee," from which the trustee may recover under 11 U.S.C. § 550(a) regardless of good faith, or a "subsequent transferee" entitled to assert protection as a good faith transferee for value under 11 U.S.C. § 550(b).

The statutes relevant to this issue are straightforward. Section 550(a) generally endows the trustee, once he has avoided a transfer pursuant to § 547 or some other transfer-avoiding statute, with the ability to recover:

> for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the *initial transferee* of such transfer or the entity for whose benefit such transfer was made, or
> >
> > (2) any *immediate or mediate transferee* of such initial transferee.[34]

The next subsection, § 550(b), however, offers relief for those transferees that qualify under subsection (a)(2) as an "immediate or mediate transferee of such initial transferee" (hereafter "subsequent transferee"). Specifically, the statute provides:

> The trustee *may not recover under section (a)(2)* of this section from—
>
> > (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided;....[35]

In the instant case, the district court analyzed in detail whether Cullen had (1) taken property "for value," (2) "in good faith," and (3) "without knowledge of the voidability of the transfer avoided," and concluded that Cullen either satisfied these requirements as a matter of law or raised issues of fact that precluded summary judgment in favor of the trustee. As the trustee does not seriously challenge these rulings on appeal, the sole remaining question is the threshold one—that is,

---

[34]11 U.S.C. § 550(a) (emphasis added).

[35]11 U.S.C. § 550(b) (emphasis added).

12

whether Cullen was (1) any kind of transferee at all, (2) an "initial transferee" under § 550(a)(1), or (3) a subsequent transferee under § 550(a)(2).

Curiously, without apparent question or analysis, the district court apparently assumed or accepted Cullen's assertion that, as the property in question was first transferred from Criswell to the Children's Trust, the filing of the abstract of judgment constituted a *subsequent transfer* for value under section 550(b), and therefore Cullen is in fact a *subsequent transferee.* On appeal, the trustee challenges this finding with two arguments.

The trustee first contends that Cullen cannot be considered a transferee of any kind because, at the time it filed its abstract of judgment, legal title to the oil and gas properties had been conveyed to and was clearly held by the Children's Trust; accordingly, the trustee reasons, Cullen's judgment lien did not attach to any real property of the debtor located in Live Oak County. In essence, the trustee is asserting that the filing of the abstract of judgment did not effectuate a transfer of "an interest of the debtor in property" under § 547(b). Ironically, this is precisely the argument that Cullen previously asserted and that the trustee successfully opposed in both the bankruptcy and district courts and that he still opposes in response to Cullen's cross-appeal. As the doctrine of judicial estoppel bars a party from assuming a position that is inconsistent with one tha[36] the trustee here is judicially estopped from asserting this new position and concomitantly must be bound by the district court's finding that there was "an interest of the debtor in property" against which the filing of the judgment lien attached so as to constitute a preference under § 547(b), and that the creation of the judgment lien constitutes a transfer for purposes of § 547(b).

The trustee's second and, in the end, prevailing argument is simply that if Cullen is a transferee at all, it has to be an "initial transferee" under § 550(a)(1), not a subsequent transferee

---

[36] *See Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988) ("Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. Generally, the doctrine applies when a party attempts to contradict his own sworn statement in the prior litigation."); *U.S. for Use of American Bank v. C.I.T. Const. Inc. of Texas,* 944 F.2d 253, 259 (5th Cir.1991) (doctrine of judicial estoppel applies if first court has accepted the party's prior inconsistent position).

13

under § 550(a)(2) and (b). Stated more completely, the logic goes as follows: Cullen's abstract of judgment created a judicial lien which attached to "an interest of the debtor in property;" that lien constituted a transfer from the debtor whose interest was subjected to the lien to Cullen as the lienor; that transfer constituted a preference under § 547(b), being the actual transfer that the trustee avoided pursuant to § 547(b)—and being the value he here seeks to "recover for the benefit of the estate" pursuant to § 550(a); with respect to this action, the lien's transfer of the debtor's equitable interest in the Live Oak County minerals to Cullen as lienor is, inescapably, an *initial* transfer, making Cullen an "initial transferee;" and, as "an initial transferee," Cullen cannot assert protection under the good faith transferee for value clause which is reserved for subsequent transferees only under § 550(b).

Cullen's response to this common sense argument is that it was a subsequent transferee because there were in fact two transfers involving the same property: the first from Criswell to the Children's Trust and the second represented by the filing of the abstract of judgment which created the judgment lien—presumably from that trust directly to Cullen. The crucial flaw in Cullen's logic, however, begins with its refusal to acknowledge that (1) Criswell, the debtorhe subject minerals and (2), even if he had, the nullification of his transfer to the Children's Trust on stipulated grounds of fraud made that transfer void ab initio as a matter of law, so that Criswell is deemed to have owned the subject minerals on the day that Cullen filed its abstract of judgment. Under either analysis, the only transfer with which the Bankruptcy Code is concerned for purposes of an action to avoid a preference under § 547 *and* recover for the benefit of the estate under § 550 is the actual transfer that the trustee sought to avoid under § 547(b) as a preference—here, the lien created by the recording of the abstract of judgment. The only significance of the "other" transfer (from Criswell to the Children's Trust) to this entire case is that the bankruptcy court was required to ignore the transfer of legal title that such indisputably fraudulent transfer purported to effect, and recognize instead that equitable title remained with the debtor so that Cullen's judgment lien could be deemed to attach to "an interest of the debtor in property" under 547(b). In short, there was only one preferential transfer that was avoided in this case, the lien created by the filing of the abstract of judgment: Criswell was

14

its transferor and Cullen was unmistakably its "initial" transferee.

Furthermore, Cullen's citation of our decision in *Matter of Coutee,*[37] in which we stated that a party who receives a preferential transfer of *funds* "directly from the debtor will not be considered the initial transferee unless that party gains *dominion or control* over the funds,"[38] does nothing to help its cause. As the context of *Coutee* and the line of cases it relied on makes clear, the so-called "dominion or control" test applies only in situations involving conduits or intermediaries, such as the law firm in *Coutee* which transferred funds it received for a client/debtor to a bank which had, at the firm's request, loaned money to the client. Applying the test in *Coutee* itself, we found that the bank, not the law firm, was the "initial transferee" because the firm had only held judgment proceeds in trust before deducting its legal fees, returning a portion of the funds to the client, and paying the bank's note in full.[39] In a word, *Coutee,* the cases cited therein, and the other two "dominion and control" cases cited by Cullen,[40] are inapposite to situations like the one we consider today, in which the creation of a judgment lien constituted the avoided preference.

By contrast, in one instructive case, which does address the avoiding of a preferential judicial lien under § 547(b) and a judgment creditor's status as a transferee under § 550, a district court held (correctly) that (1) a judgment creditor which had obtained a writ of execution allowing a sheriff to execute on and sell a debtor's property to third parties—all within the 90 day pre-petition automatic preferential transfer period—was the "initial transferee" for purposes of a § 550 recovery action and (2) the only possible "subsequent transferees" who could be shielded from the trustee's avoiding

---

[37]984 F.2d 138 (5th Cir.1993).

[38]*Id.* at 141 (emphasis added).

[39]*Id.*

[40]*In re Reeves,* 65 F.3d 670, 676 (8th Cir.1995) (to be an "initial transferee" creditor must have dominion and control over "transferred *funds* "); *In re First Security Mortgage Company,* 33 F.3d 42, 43-44 (10th Cir.1994) (bank was not "initial transferee" because it held funds in lawyer's trust account only as a financial intermediary).

15

powers were the purchasers at the Sheriff's sale.[41]  In like manner, the only persons in the instant case who could plausibly assert the subsequent transferee defense under § 550(b) would be either one to whom Cullen had assigned its lien after the abstract was recorded (had there been such an assignment), or a purchaser of the property at a sheriff's or marshal's sale (had there been such a sale).

In sum, we must conclude that the district court erred in ruling that Cullen is entitled to assert the good faith transferee for value defense reserved for subsequent transferees under § 550(b), an error flowing naturally enough once the court assumed or accepted as a given that Cullen was a subsequent transferee.  We hold, to the contrary, that Cullen is an "initial transferee" under § 550(a)(1) from which the trustee may recover for the benefit of the estate, regardless of Cullen's "faith," good or otherwise.

## CONCLUSION

For the reasons first above set forth, we agree with the district court's determination that the filing of Cullen's abstract of judgment in Live Oak County created a judicial lien which attached to the oil and gas properties that Criswell had fraudulently transferred to the Children's Trust, and that the lien thus created constituted a transfer of an interest of Criswell, as debtor, in the subject properties.  But for reasons last above set forth, we disagree with the district court's apparent assumption that Cullen was a subsequent transferee, and we hold instead that Cullen was an initial transferee of the subject properties.  As such it was not entitled to assert good faith as protection against recovery of those properties as preferences, and thus cannot prevail against the trustee's asserted claim for recovery of preferentially transferred property of the debtor.  We therefore reverse the judgment of the district court to the extent it found Cullen to be entitled to assert the good faith protection of § 550(b), and, in the interest of judicial economy, we remand this case directly to the bankruptcy court with instructions to reinstate its grant of summary judgment in favor of the trustee, and order that the proceeds of the trustee's sale of the Live Oak oil and gas properties belong to the estate of the debtor, not to Cullen.

---

[41]*In re Cockreham,* 84 B.R. 757, 762 (D.Wyo.1988).

16

REVERSED and REMANDED with instructions.